UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT L. HOUGHTALING,

        Petitioner,

v.                                                          Case No. 20-12969

SHANE JACKSON

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, GRANTING CERTIFICATE OF APPEALABILITY WITH RESPECT TO PETITIONER'S THIRD CLAIM, AND GRANTING PERMISSION TO APPEAL *IN FORMA PAUPERIS***

Petitioner Robert L. Houghtaling brings this petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Huron Circuit Court of second-degree home invasion, Mich. Comp. Laws § 750.110a(3), and safe breaking, Mich. Comp. Laws § 750.531. Petitioner was sentenced to concurrent terms of 11 to 40 years.

The petition raises four claims: (1) the trial court erred in admitting text messages that referred to Petitioner's drug use, (2) insufficient evidence was presented at trial to establish Petitioner's identity as the perpetrator, (3) Petitioner was denied the effective assistance of trial counsel for counsel's failure to respond to unsolicited testimony regarding Petitioner's parole status and drug use, and (4) Petitioner was denied the effective assistance of counsel on direct appeal when his appellate counsel failed to raise his trial counsel claim. (ECF No. 1, PageID.6-10.)

Case 3:20-cv-12969-RHC-KGA  ECF No. 12, PageID.2778  Filed 03/07/22  Page 2 of 20

For the reasons stated below, the court will deny the petition. The court will, however, grant Petitioner a certificate of appealability on his ineffective assistance of trial counsel claim and grant Petitioner leave to appeal *in forma pauperis*.

## I. BACKGROUND

The Michigan Court of Appeals summarized the facts:

> Defendant's convictions arise from the home invasion and safe breaking at the Bad Axe home of ninety-year-old Dr. Edward Steinhardt, who had hired defendant's girlfriend, Jenna Clark, to assist him in the home with personal needs and chores, and to clean the house and retrieve the mail when he spent winters in Florida. On Thursday, February 12, 2015, Clark steam cleaned the carpet in Dr. Steinhardt's home. That same day, defendant entered the home to retrieve the steam cleaner and put it in Clark's car. Sometime between 5:00 p.m. on February 13, and 9:30 a.m. on February 14, someone entered Dr. Steinhardt's home by breaking the northwest entry door, went into the basement, retrieved the key to a safe from a drawer in a desk next to the safe, opened the safe with the key, and took more than $8,000 in cash and other items from the safe. The key to the safe, as well as other items with defendant's and Clark's names on them, were found in a garbage bag in a dumpster at the apartment complex where defendant and Clark lived.

*People v. Houghtaling*, 2017 WL 2664748 at *1 (Mich. Ct. App. June 20, 2017).

After sentencing, Petitioner filed an appeal in the Michigan Court of Appeals. His brief on appeal, brought by his appellate counsel, raised the following three claims:

> I. The trial court violated Houghtaling's due process rights by admitting unredacted versions his text messages.
>
> II. There was insufficient evidence to prove that he was the person who broke into the victim's home.
>
> III. The trial court erred by improperly scoring offense variable (OV) 19.

Petitioner also filed his own supplemental *pro se* brief that raised an additional nine claims:

2

>I. The prosecutor violated Houghtaling's due process and right to a fair trial by introducing evidence that Houghtaling was on parole at the time of the offense.
>
>II. The prosecutor violated Houghtaling's due process rights by eliciting details of his criminal history through a witness.
>
>III. The prosecutor denied Houghtaling the right to a fair trial by introducing letters written by Ashley Houghtaling, his sister.
>
>IV. The prosecutor violated Houghtaling's right to confrontation through the testimony of Jenna Clark, his girlfriend, about drug paraphernalia.
>
>V. Prosecutorial misconduct denied Houghtaling a fair and impartial trial and due process of law.
>
>VI. The prosecutor improperly shifted the burden of proof to Houghtaling, to prove his innocence.
>
>VII. The trial court erred by failing to give adequate jury instructions.
>
>VIII. Trial counsel was ineffective for failing to file a motion *in limine* to exclude Houghtaling's parole status, criminal record, and for failing to object to several instances of prosecutorial misconducts, and for failing to request jury instructions that would address matters raised at trial.
>
>IX. The cumulative effect of all the errors amounted to violation of his constitutional right to due process and an impartial jury.

The Michigan Court of Appeals affirmed in an unpublished opinion. *See Houghtaling,* 2017 WL 2664748. Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims. The Michigan Supreme Court denied the application by standard form order. *People v. Houghtaling*, 909 N.W.2d 232 (Mich. 2018).

Petitioner returned to the trial court and filed a motion for relief from judgment that raised three claims:

>I. The trial court's jury instructions were erroneous because they destroyed Houghtaling's alibi defense theory.

3

> II. Trial counsel was ineffective for failing to object to evidence of Houghtaling's criminal history, failure to object to jury instructions, and failing to impeach a key prosecution witness.
>
> III. Appellate counsel was ineffective for failing to raise the two issues above.

Petitioner's second post-conviction review claim was largely duplicative of the eighth claim raised in his pro se brief on direct appeal—that claim now forms Petitioner's third habeas claim.[1]

The trial court denied the motion, finding that "Defendant has failed to demonstrate good cause and actual prejudice." (ECF No. 9-15, PageID.2733.) Petitioner appealed, but the Michigan Court of Appeals denied his application for leave to appeal because "defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." (*Id.*, PageID.2675.) The Michigan Supreme Court denied leave to appeal by unexplained form order. *People v. Houghtaling*, 948 N.W.2d 572 (Mich. 2020).

## II. STANDARD

The follow standard of review applies for habeas cases under 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] Respondent does not argue that Petitioner's third claim is procedurally defaulted. (ECF No. 8, PageID.483.)

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Additionally, the court must presume the correctness of a state court's factual determinations. *See* 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that" reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, "[o]nly an 'objectively unreasonable' mistake, one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (internal citation omitted) (quoting *Richter*, 562 U.S. at 103).

### III. DISCUSSION

### A. Admission of Text Messages

Petitioner's first claim concerns the admission of text messages he sent to Jenna Clark a few days after the date of the crime. He asserts that the texts referred to his drug use or drug dealing, and they should have been excluded or at least redacted before being admitted at trial. (ECF No. 1, PageID.6.)

Before the text message issue arose at trial, a similar issue surfaced with respect to a February 24, 2015, recorded phone call between Petitioner and Clark. During the call, Petitioner stated:

> I flushed 2,000 worth of "F"n drugs down that toilet that day because you got pissed, you know that, right? And then I broke my scales, do you remember that? I plugged the toilet with 2,000 worth of narcotics because you got mad at me, Bitch. I flushed such a large ball of heroin and cocaine down that toilet in that "F"n motel room - Because that's where they went, the proofs are that they went to the motel room - that I plugged the toilet, honey. And then I broke my scales for you. That's when you know somebody loves you. You do know I just bought an ounce of coke, I just paid $1,100 and then I had a half an ounce of heroin, you do know that, right?

(ECF No. 9-9, PageID.1479; ECF No. 9-13, PageID.2508.)

The prosecutor asserted that the recording was admissible because the statements showed that Petitioner had obtained a large sum of cash right after the crime occurred. (ECF No. 9-9, PageID.1479.) Defense counsel argued that the references to drugs made the recording more prejudicial than probative. (*Id.*, PageID.1480.) The prosecutor then produced a redacted transcript of the call that omitted references to the drugs and scales. Defense counsel indicated that he had no objection to admission of the redacted transcript. The trial court ruled that the redacted

6

versions of the recording and transcript could be admitted. (ECF No. 9-10, PageID.1627-29.)

Petitioner's first claim does not challenge the admission of the phone call. Rather, he challenges the prosecutor's use during cross-examination of Petitioner's testimony of text messages with similar content sent from Petitioner to another friend on February 14. Petitioner wrote in the message: "That bitch flushed all my shit, homey, check on some loud and the burner too, I'm here at the room, I'll come see you in a while." (ECF No. 9-11, PageID.2103.) Petitioner stated in a second text message: "Yeah, shit went bad last night, I'm still here, that bitch flushed my shit." (*Id.*)

Defense counsel argued that, like the phone call, admission of these texts was as prejudicial as the unredacted phone call. (*Id.*, PageID.2109-12.) The prosecutor distinguished the situations because the texts were being used to impeach Petitioner's direct examination testimony that the alleged flushing incident in the motel room with Clark never occurred. The trial court ruled that the texts could be used to impeach Petitioner's testimony, and the lack of any clear reference to drugs meant that their probative value was not substantially outweighed by the danger of unfair prejudice. (*Id.*, PageID.2112-15.)

Petitioner argues that the two rulings were inconsistent. He argues that by ruling that only the redacted phone call was admissible, the court recognized the unfair prejudicial character of the references to drugs. Petitioner asserts that the clear implication in the texts was that Petitioner was referring to drugs, so that the jury was presented with the same information that had been redacted from the phone call.

The Michigan Court of Appeals rejected the claim on the merits:

> Here, the impeachment evidence was more than marginally probative because it tended to call into question defendant's testimony that he did not flush something valued at $2,000 the weekend of Valentine's Day 2015 and to establish the timeframe during which defendant had excess money at his disposal. The $2000 was important because it was theorized to have been part of the sudden influx of cash that defendant had contemporaneous to the home invasion. Further, the jury had already heard evidence that defendant had flushed something and, therefore, the impact of the text messages, which did not specifically mention drugs, was minimal. Any prejudicial effect did not substantially outweigh the probative value of the impeachment evidence.

*Houghtaling*, 2017 WL 2664748 at *3.

Petitioner asserts that admission of the texts rendered his trial unfair in violation of due process. Federal habeas courts, however, usually do not question state-court rulings on the admission or exclusion of evidence under state law. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)). Even claims challenging admission of evidence as potentially prejudicial as "gruesome" photographs of a deceased murder victim are not cognizable in a habeas corpus proceeding. *Gerlaugh v. Stewart*, 129 F.3d 1027, 1032 (9th Cir. 1997). This is because the application of state evidentiary rules ordinarily does "not present a question of constitutional magnitude." *Pearl v. Cason*, 219 F. Supp. 2d 820, 830 (E.D. Mich. 2002) (citing *Cooey v. Coyle*, 289 F.3d 882, 893-94 (6th Cir. 2002)).

"States have wide latitude with regard to evidentiary matters under the Due Process Clause." *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017). A trial court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief unless the error rendered the proceeding fundamentally unfair. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

The alleged error in this case did not render Petitioner's trial fundamentally unfair in violation of due process. As the state appellate court found, the jury had already heard testimony that Petitioner flushed something of value down the toilet in the timeframe immediately after the theft. Petitioner then in his own testimony denied that he flushed anything at all. Impeaching that testimony with his contrary text message was highly probative of both his credibility and whether it was true he had sudden access to a large sum of cash just after the crime had occurred.

Petitioner asserts that the texts obviously referred to illegal drugs by using the terms "loud" and "burner," but the court is not convinced that the use of these terms added much to the implication of illegal activity already revealed by the agreed-to admission of the redacted recorded phone call. The jury was already informed that Petitioner flushed "something" of high value down the toilet. No evidence was presented to try to explain the purportedly inflammatory meaning of euphemistic jargon such as "loud" and "burner." The trial judge said he had "no information what that is." (ECF No. 9-11, PageID.2113) While it may have been preferable to redact the text messages in a manner similar to the phone call recording, their use as-is in cross-examining did not render Petitioner's trial fundamentally unfair. The court declines to grant relief on Petitioner's first claim.

### B. Sufficiency of the Evidence

Petitioner next asserts that insufficient evidence was presented at trial to establish his identity as the perpetrator. (ECF No. 1, PageID.7.) He asserts there was no direct evidence showing that he was in the victim's home other than the evidence that he briefly stopped by to help remove a carpet cleaning machine. Petitioner notes

9

the absence of fingerprint evidence, and he indicates that defense witnesses provided strong alibi testimony.

The Michigan Court of Appeals rejected the claim as follows:

Despite the lack of direct evidence linking defendant to the crimes, there was ample circumstantial evidence that established that defendant was the person who broke into Steinhardt's safe and stole items from the safe. The prosecution presented evidence regarding defendant's motive to steal and his knowledge of the likely contents of the safe. There was also testimony as to defendant's opportunity to enter the home to commit the theft and defendant's influx of cash immediately after the home invasion.

The motive testimony came from Clark's cousin, Krissy Logsdon, who testified that she heard defendant and Clark bickering about money a few weeks before Valentine's Day. Defendant's sister, Ashley Houghtaling, provided testimony regarding defendant's knowledge of the safe and its probable contents when she testified that in the week leading up to Valentine's Day, defendant told her that the man that Clark worked for must be rich because his house was big and he had "expensive things." It is undisputed that defendant had been at the home on February 12 to assist Clark in returning a rented carpet cleaning machine. It was after that visit defendant also mentioned that the man had a safe, that there was a key in a desk in the home, and that "it would be funny to go back there and rob him because he was so rich."

The home invasion and safe breaking occurred sometime after Approximately 5:00 p.m. on February 13 and before Approximately 9:30 a.m. on February 14. Ashley testified that defendant and Clark were gone from the apartment for Approximately 45 minutes between 8:00 and 9:00 p.m. on February 13. The key to Steinhardt's safe was found in a trash bag in the dumpster outside the apartment complex where defendant and Ashley lived.

Further, defendant was observed by Ashley's friend Dwayne Lively in defendant's bedroom with a stack of money sometime between 9:00 and 9:30 p.m. on February 13. Evidence was also presented that defendant paid for all expenses for himself and Clark for a weekend getaway, including gas, two hotel rooms, meals, gambling, shopping, an engagement ring, and something valued at $2,000 that defendant indicated was flushed down a toilet. And defendant's parole officer testified that defendant had $1,100 in his pocket when he was arrested on a parole violation on February 18.

> Additionally, Joseph Gardyszewski testified that defendant mentioned breaking into a home in Bad Axe that had "a large sum of money" inside when the two were cellmates.
>
> Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that defendant committed the home invasion and broke into the safe. Although defendant presented testimony of his whereabouts on February 13, there was a period of 45 minutes unaccounted for during which the crime could have been committed. Also, defendant had expressed concerns about a lack of money in the week before Valentine's Day, yet he spent a considerable amount of money over the Valentine's Day weekend, and still had over $1,000 in cash in his pocket when arrested on a parole violation. The jury had the opportunity to observe the witnesses and piece together the events testified to having occurred on February 13 and 14. From the evidence presented, it was reasonable for the jury to conclude that defendant knew where the safe was and that it was opened by a key.

*Houghtaling*, 2017 WL 2664748, at *2.

The critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[R]eview of a state-court conviction for sufficiency of the evidence is very limited" because federal habeas courts "give two layers of deference to state-court convictions." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).

First, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)).

Second, on habeas review, a federal court may overturn a state court decision rejecting a sufficiency of the evidence challenge "only if the state court decision was 'objectively unreasonable.'" *Id*. (quoting *Cavazos*, 565 U.S. at 2); *see also Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017) (stating that "two layers of deference apply [to a sufficiency-of-the evidence claim], one to the jury verdict, and one to the state appellate court").

The Michigan Court of Appeals did not unreasonably apply this standard. The evidence demonstrating Petitioner's identity as the perpetrator, though circumstantial, was very strong. Petitioner made incriminating statements before and after the crime. Before the crime, he told his sister that he knew that the victim had a safe with valuables in it, he told her where the key to the safe was kept, and he joked that he should go back to the house and rob it. (ECF No. 9-10, PageID.1634-41.) The basis for his sister's testimony was corroborated by the fact that Clark worked for the victim, and Petitioner helped her remove a carpet cleaning machine from the house. Then, after the crime, Petitioner told a fellow inmate at the county jail that he had broken into a safe inside a house. (ECF No. 9-7, PageID.1082-84.)

Additional strong circumstantial evidence further linked Petitioner to the crime. Days before the break-in, Petitioner complained to a witness that he did not have enough cash. (ECF No. 9-8, PageID.1440, 1458-59.) About $8,000 was taken from the safe. Then, immediately after the theft, Petitioner was seen freely spending thousands of dollars. He flushed two thousand dollars' worth of something down a toilet, he gave substantial amounts of cash to family and friends, and he went with Clark to the Detroit casinos. After all of this, Petitioner still had over a thousand dollars in cash in his wallet

when he was arrested. (ECF No. 9-8, PageID.1384-86; ECF No. 9-9, PageID.1487-94; ECF No. 9-11, PageID.1961-71, 2115-17.) Petitioner testified that he earned the money—thousands—tattooing the preceding weekend. It suffices to say that the jury was not bound to credit his testimony.

Perhaps the most incriminating evidence, however, was the discovery of the key to the victim's safe, found by police in a garbage bag that also contained items associated with Petitioner and Clark. (ECF No. 9-10, PageID.1653-57.) Moreover, Petitioner's friend testified to Petitioner's bizarre and repeated insistence, reminiscent of Lady Macbeth's obsessive handwashing, that the friend get the garbage bag out of the apartment. The witness said that Petitioner's urgency and adamancy was out of proportion with an every-day request to assist with a garbage bag. (*Id.*, PageID.1765-70.)

Viewed most favorably to the prosecution, the discovery of the key in Petitioner's garbage bag, Petitioner's sudden influx of cash, and his statements before and after the crime all constituted strong evidence that he was the perpetrator. The conclusion of the Michigan Court of Appeals, that sufficient evidence was presented, was therefore reasonable. Petitioner's second claim is without merit.

### C. Ineffective Assistance of Counsel

Petitioner thirdly asserts that he was denied the effective assistance of counsel when his trial attorney failed to suggest any corrective actions after witnesses testified to his parole status and prior drug use. After reciting the controlling standard, the Michigan Court of Appeals rejected the claim on the merits:

13

> Defendant argues that trial counsel failed to file a pretrial motion in limine to exclude defendant's parole status and prior criminal record or, alternatively, that counsel should have requested a limiting instruction under M Crim JI 4.11. As previously discussed, evidence regarding defendant's parole status and prior criminal record came in through unresponsive answers to proper questioning by the prosecutor. Further, the trial court did not plainly err by failing to sua sponte instruct on M Crim JI 4.11.

*Houghtaling*, 2017 WL 2664748, at *6.

To show that he or she was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*., 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The state appellate court's decision was not responsive to Petitioner's argument. The court found that counsel was not ineffective because the references to Petitioner's parole status were unexpected, and the trial court was not required to *sua sponte* give a limiting instruction. That reasoning avoids the question. It matters not, for purposes of this claim, whether those references were adduced intentionally or inadvertently. The claim to be addressed is that counsel performed deficiently *by failing to prevent or reduce the impact* of evidence of Petitioner's parole status. Part of reasonably effective

advocacy is dealing with surprise occurrences at trial, and Petitioner's claim is that, once the jury heard that Petitioner was a parolee, counsel should have requested a curative instruction—irrespective of whether the trial court was required to *sua sponte* read one. The discussion and rejection of this claim by the state appellate court, in short, did not fully address Petitioner's argument, let alone reasonably reject it.

Nevertheless, Petitioner has failed to demonstrate entitlement to habeas relief because he has not demonstrated a violation under the *Strickland* standard. According to Petitioner, his parole status and prior criminal behavior were mentioned five times at trial. But other than the testimony of Petitioner's parole agent who discovered and seized the large sum of cash from his wallet (ECF No. 9-8, PageID.1383-85), the other references were mostly unsolicited and isolated, with one instance being noted as a result of Petitioner's own request.

First, Joseph Gardyszewski testified that he shared a jail cell with Petitioner after his arrest. Gardyszewski testified to Petitioner's statements: "He had mentioned breaking into a home in Bad Axe, he was hoping that he wasn't picked up before his parole violation was up because he was—he was out of the county like five days, they had to come and get him, so he mentioned breaking into a house with a large sum of money and he called his girlfriend and he mentioned that off and on. . . . He didn't spend it, he said he hid it until he got out because he had a—he knew he was going to be violated for parole." (ECF No. 9-7, PageID.1084.)

Second, Krissy Logsdon testified that she was Jenna Clark's sister. At the behest of Petitioner, defense counsel asked Logsdon whether Petitioner told her that he wanted to be a changed man and what she thought that referred to. (ECF No. 9-8,

PageID.1469-70.) Logsdon testified that it was in relation to her telling Petitioner that he needed to change his ways for the benefit of her sister and her sister's young sons; specifically, she said it referred to the fact that "he used to deal drugs and do drugs," and not the instant crime. (*Id.*, PageID.1471.)

Third, Christopher Ulin testified that he was Jenna Clark's cousin and knew Petitioner through her. (ECF No. 9-9, PageID.1551.) He saw Petitioner on January 16, 2015, right after Ulin was released from jail. (*Id.*, PageID.1552-53.) Ulin told Petitioner that the police did not "play games" in the area, and he should stay out of trouble. (*Id.*, PageID.1556-57.) Ulin gave him the advice because he knew Petitioner had just gotten out of prison and was on parole. (*Id.*, PageID.1557.)

Finally, Dwayne Lively testified that he was in a relationship with Petitioner's sister. (ECF No. 9-10, PageID.1753.) Around February 13, 2015, he came to Huron County to visit Petitioner's sister, Lively mentioned in passing that Petitioner had lived with Lively after "he got out of prison the first time." (*Id.*, PageID.1760.)

The references to Petitioner's parole status, drug use, and prior incarceration were largely irrelevant as they were not factually connected to the instant offense. The degree of prejudice, however, was attenuated. It did not create a reasonable probability of a different trial result in the absence of irrelevant comments such as these. As an initial matter, the references were brief, largely unsolicited, and relatively isolated. Indeed, the record shows that whenever such a reference arose, both attorneys immediately moved on to other topics; the prosecutor made no mention of the matter whatsoever during closing argument. In other words, the trial was not "permeated" with constant references to Petitioner's prior criminal history. Petitioner's trial counsel may

16

well have decided that curative instructions would have done more harm than good in these circumstances. *See Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012) (finding no ineffectiveness because counsel "may have . . . made a tactical choice not to provide curative jury instructions to avoid drawing further attention to the fact that the pictures were mug shots"); *see also Stamps v. Rees*, 834 F. 2d 1269, 1276 (6th Cir. 1987) (holding attorney's actions were not unreasonable in failure to request jury instruction on reference to prior convictions because it was "quite evident that . . . counsel simply wanted to get past the prior convictions as quickly as possible without bringing undue attention to them"). The transcript reveals—repeatedly—that Petitioner's trial counsel knew how to state an objection when he wanted to.

But, more to the point, the outcome of the trial had little if anything to do with Petitioner's parole status or prior drug use. Counsel had far more important and problematic issues to contend with. For one, he had to account for Petitioner's statement to his sister before the crime that he was considering breaking into the victim's house and knew where the key to the safe was kept. Then, there was Petitioner's admission to his cellmate—who had not been promised anything in exchange for his testimony—that he committed the crime. These incriminating statements were dramatically corroborated by evidence proving that Petitioner had recently been in the victim's house and that he had suddenly acquired a significant sum of cash after having complained just prior to the crime that he had no money. The capstone—or perhaps more poetically, the "key"—to the prosecutor's case was that the key to the safe was found in Petitioner's garbage bag that was such a focus of his

17

attention, with his repeated, oddly out-of-proportion, and insistent statements seeking its immediate disposal.

In short, the evidence of Petitioner's guilt was extremely strong, whereas the references to Petitioner's parole status and prior drug use were relatively limited and brief; no such reference was used by the prosecution to argue Petitioner's guilt. Even if defense counsel had objected to the unsolicited references and asked for curative instructions or had otherwise successfully prevented the information from coming out, there is still no *reasonable* probability of a more favorable trial result. Given the substantial evidence of home-invasion guilt and the isolated nature of any improper extraneous references, Petitioner's *Strickland* claim is without merit.[2]

### D. Certificate of Appealability

In order to appeal this court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court

---

[2] Petitioner asserts in his fourth claim that his appellate counsel was ineffective for failing to raise his trial counsel claim on direct appeal. Because the claim is without merit, appellate counsel was not ineffective for failing to raise it. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."); *cf. Allen v. Harry*, 497 F. App'x 473, 483 (6th Cir. 2012) ("Because Allen cannot demonstrate the necessary prejudice under *Strickland* resulting from his trial counsel's failure to object to the challenged testimony, he cannot demonstrate the necessary prejudice resulting from his appellate counsel's failure to raise a claim that trial counsel was ineffective due to this same failure to object.").

may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his first, second, and fourth claims because they are devoid of any merit. However, jurists could conclude that the issues presented in Petitioner's third claim are adequate to deserve encouragement to proceed further. Therefore, a certificate of appealability will be granted with respect to Petitioner's third claim.

Finally, Petitioner is granted permission to appeal *in forma pauperis* because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

### IV. CONCLUSION

IT IS ORDERED that Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability is GRANTED, but only with respect to Petitioner's third claim.

Finally, IT IS ORDERED that Petitioner is permitted to proceed *in forma pauperis* on appeal.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: March 7, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 7, 2022, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-12969.HOUGHTALING.DenyingHabeas.BHB.MAZ.RHC.2.docx